234

UNITED STATES of America,
Plaintiff,

v.

OZARK AIR LINES, INC.,
Defendant.

No. 73 C 489(A).

United States District Court,
E. D. Missouri, E. D.

Feb. 28, 1974.

Donald J. Stohr, U. S. Atty., J. Patrick Glynn, Asst. U. S. Atty., St. Louis, Mo., for plaintiff.

Paul L. Bradshaw, Neale, Newman, Bradshaw & Freeman, Springfield, Mo., Lon Hocker, Clayton, Mo., for defendant.

MEMORANDUM OPINION

HARPER, District Judge.

The plaintiff, United States of America, filed this civil action against the defendant, Ozark Air Lines, Inc., under Section 903 of the Federal Aviation Act of 1958, as amended in 49 U.S.C. § 1473. This Court has jurisdiction under 28 U. S.C. § 1345. Both plaintiff and defendant have filed motions for summary judgment pursuant to Rule 56 of the F. R.Civ.P. and have agreed to and filed a stipulation of facts.

Under the Federal Aviation Act of 1958, Section 601, as amended, 49 U.S.C. § 1421, the defendant in scheduling its pilots for duty aboard its aircraft, is required to comply with the flight time limitations for domestic air carriers. These limitations are set forth in 14

CFR 121, including Section 121.471(d), which provides as follows:

"Each domestic air carrier shall relieve each flight crew member engaged in scheduled air transportation from all further duty for at least 24 consecutive hours during any seven consecutive days."

In its complaint the plaintiff alleges that on several occasions during the month of April, 1971, the defendant, certificated by the Federal Aviation Administration as a domestic air carrier, assigned some of its pilots[1] who were engaged in the operation of aircraft in air transportation as "back-up reserve" pilots in violation of 14 CFR 121.471(d). The parties have stipulated that the above-mentioned regulation, 14 CFR 121.471(d), has remained essentially unchanged since it was promulgated by the Bureau of Air Commerce after the enactment of the Air Commerce Act of 1926. This regulation does not define the word "duty" and the parties are in disagreement as to whether one is on "duty" when he is on "back-up reserve". "Back-up reserve" for the purpose of this suit means the time when an airman is free from duty except that he must be available to be contacted by defendant at any time within a two-hour period, and he also must be in a position to report for duty within two hours after being contacted.

Defendant's practice is to make the assignment of its reserve airmen at 3:00 p. m. each day for the following day. At that time each airman is either assigned (1) flying duties, (2) standby reserve, or (3) back-up reserve. If one on back-up reserve is not called upon to fly or to report to the airport, defendant treats it as a 24-hour period off within the meaning of 14 CFR 121.471(d).

The plaintiff contends that 14 CFR 121.471(d) should be interpreted to mean that the airman must be relieved of all restraint of any kind during the 24 consecutive hours therein prescribed, in accordance with numerous opinions issued by the Federal Aviation Administration and the Civil Aeronautics Administration. The defendant, on the other hand, contends that 14 CFR 121.471(d) should be interpreted to mean that an airman may properly be available for duty during a period of rest so long as he is not actually called to duty, which is in accordance with an opinion dated June 24, 1966, by the General Attorney of the Central Region of the Federal Aviation Administration.

The parties have agreed by stipulation filed November 30, 1973, that if, in fact, 14 CFR 121.471(d) should be interpreted in the manner claimed by the plaintiff, then the defendant is guilty of fifteen violations thereof. Under 49 USC 1471, the civil penalty is not to exceed $1,000.00 for each such violation.

In an opinion dated April 22, 1949, the Acting General Counsel of the Civil Aeronautics Administration held that a form of "alert" or "standby" time assigned to a pilot by an air carrier was duty within the meaning of Section 61.-518(c) of the Civil Air Regulations, which contained the predecessor provisions of 14 CFR 121.471(d). With minor changes in language, Section 61.-581(c) also provided that "Relief from all duty for not less than 24 consecutive hours shall be provided for and given to a pilot at least once during any 7 consecutive days." The opinion further held that the term "relief from duty" as used

---

[1]. During the month of April, 1971, each of the following named employees of the defendant was scheduled for duty as a back-up reserve without being relieved from duty for at least 24 consecutive hours during the seven or more consecutive days involved:

Captain C. T. Cissell—April 11 through April 17

First Officer R. Haun—April 22 through April 28

Captain P. A. Woods—April 3 through April 9

First Officer L. E. York—April 19 through April 30

First Officer M. J. Reinert—April 20 through April 26

Captain J. J. O'Brien—April 2 through 10

First Officer C. E. Eakle—April 15 through April 23

in that section "means that the pilot must be relieved from either actual work for the air carrier or present responsibility . for such should the occasion arise." (See Appendix 7)

The Acting Associate General Counsel, Regulations and Codification of the Federal Aviation Administration, in a letter dated August 3, 1967, stated that the Federal Aviation Administration had consistently interpreted "duty" as used in 14 CFR 121.471(d) to mean either actual work for the air carrier or present responsibility for work should the occasion arise. He held that when a pilot is required to hold himself available to call by telephone, it constitutes a restraint which interrupts the 24 consecutive hour period of relief from duty required by 14 CFR 121.471(d). He further held that the period of relief from duty should be prospective and free from restraint to qualify under the regulation. (See Exhibit A).

On February 14, 1969, the Chief, Regulations Branch, Flight Standards Service, Washington, D.C., in response to an inquiry by a member of the aviation industry reiterated the Federal Aviation Administration's policy in regard to whether a telephone standby system constitutes duty under 14 CFR 121.471(d). He held that "when the flight crewmember is required by the air carrier to hold himself available for calls, or to call during the 24-hour rest period, such requirements constitute a restraint which interrupts the 24 consecutive hour relief period." (See Exhibit B).

In support of defendant's contention that the assignment of a pilot to the "back-up reserve" does not constitute duty within the meaning of 14 CFR 121.471(d), defendant refers to a memorandum dated June 24, 1966, by the General Attorney, Central Region, of the Federal Aviation Administration. The memorandum stated that although pilots assigned to a standby reserve duty do not have what might be called "absolute freedom" they are "sufficiently free" to obtain the results intended by the regulation, i. e., "relief from duty in scheduled air transportation." In response to a request by the General Attorney, Central Region, of the Federal Aviation Administration, his opinion was reviewed by the General Counsel's office in Washington, D. C. Upon review by that office the Associate General Counsel, Regulations and Codification Division, advised the Central Region's General Attorney on December 22, 1966, that it did not concur with the opinion contained in the memorandum dated June 24, 1966, and that it should be revised to conform with the previous interpretations of the General Counsel. (See Exhibit G).

The regulation here in dispute was promulgated pursuant to 49 U.S.C. § 1421(a)(5) which authorized and empowered the Federal Aviation Administrator and made it his duty to prescribe and revise from time to time reasonable rules and regulations governing, in the interest of safety, the maximum hours or periods of service of airmen and other employees of air carriers.

■ Courts should be "slow to overturn an administrative decision," Labor Board v. Babcock & Wilcox Co., 351 U.S. 105, 112, 76 S.Ct. 679, 684, 100 L.Ed. 975 (1956), but, "reviewing courts are not obliged to stand aside and rubber-stamp their affirmance of administrative decisions that they deem inconsistent with a statutory mandate * * *." National Labor Relations Board v. Brown, 380 U.S. 278, 291, 85 S.Ct. 980, 988, 13 L.Ed.2d 839 (1965). Therefore, this Court must look to the purpose behind the regulation here involved to determine if the word "duty" in 14 CFR 121.471(d) includes "back-up reserve" status.

In United States v. American Trucking Ass'ns, Inc., 310 U.S. 534, 543, 60 S. Ct. 1059, 1063, 84 L.Ed. 1345, 1351 (1940) the Supreme Court said:

"There is, of course, no more persuasive evidence of the purpose of a statute than the words by which the legislature undertook to give expression to its wishes. Often these words are sufficient in and of themselves to

determine the purpose of the legislation. In such cases we have followed their plain meaning. When that meaning has led to absurd or futile results, however, this Court has looked beyond the words to the purpose of the act. Frequently, however, even when the plain meaning did not produce absurd results but merely an unreasonable one 'plainly at variance with the policy of the legislation as a whole' this Court has followed that purpose, rather than the literal words."

■ As stated earlier the parties have stipulated that 14 CFR 121.471(d) has remained essentially unchanged since it was first promulgated by the Bureau of Air Commerce after the enactment of the Air Commerce Act of 1926. Section 61.5182(c) of the Air Commerce Act of 1926 (Appendix 2) prescribes "flight time limitations" couched in terms practically identical to those contained in 14 CFR 121.471(d) of the present regulations. Throughout the provisions of Section 61.5182 of the Air Commerce Act of 1926 there are references to limitations upon flight, but there is nothing in its terms which indicates "duty" as being activity other than time actually spent in flying an aircraft. It seems clear that the "duty" referred to in the 1926 Act clearly contemplates flying an aircraft and that any other interpretation would be at odds with the obvious purpose of the 1926 Act which was to promote safety in aircraft flight by eliminating pilot fatigue resulting from aircraft flight duties.

Having found that the purpose of the Air Commerce Act of 1926 was to promote safety in aircraft flight by eliminating pilot fatigue resulting from flight duties and having further found that 14 CFR 121.471(d) has remained essentially unchanged since 1926, the Court now looks to the present regulation, 14 CFR 121.471 to determine if the word "duty" in 14 CFR 121.471(d) should be interpreted in such a way as to include "back-up reserve" status.

■ This Court first looks to the caption of the regulation which is "Subpart Q—Flight Time Limitations: Domestic Air Carriers." The caption on 121.471 (a part of Subpart Q) is "Flight time limitation: All flight crewmembers." The office of a "caption" is to declare the purpose of the act, or as in this case the purpose of the regulation. It is obvious, then, that the purpose of Subpart Q of these regulations is clearly directed at limiting the amount of time a crewmember may actually spend on duty aloft. The first three subsections of 14 CFR 121.471, subsections (a), (b) and (c), limit the total hours of "duty aloft" during any year, any month, any week and any day; subsection (d) then states that each crewmember shall be relieved "from all further duty for at least 24 consecutive hours during any seven consecutive days." Clearly the implication is that subsection (d), when read in conjunction with the first three subsections, is referring to further duty aloft. What 14 CFR 121.471(d) is saying is that not only is a crewmember limited in the total number of hours that he can be on duty aloft each year, each month, each week and each day, but that each crewmember must also be given at least one day in any seven consecutive days when he is not on duty aloft.

The plaintiff cites Air Line Pilots Assoc. Int'l v. Federal Aviation Administration, 147 U.S.App.D.C. 209, 454 F.2d 1052, 1054 (1971) as authority for its position that the word "duty" in 14 CFR 121.471(d) should include "back-up reserve" status. Plaintiff's argument is that the court must, in light of the deference due to agency constructions of their own regulations, follow the agency's construction unless it is without rational basis. The plaintiff has given no explanation of how its interpretation of the word "duty" in 14 CFR 121.471(d) would rationally fit into the overall concept of "Flight Time Limitations" as they have existed from 1926 to the present date. The plaintiff's sole justification for its interpretation of the word "duty" is some prior agency interpretations, but those interpretations are not all in agreement.

■ In view of the legislative history of 14 CFR 121.471(d) and its obvious purpose, to promote air safety by limiting the amount of time a crewmember can spend on duty aloft, this Court finds no rational basis for the plaintiff's interpretation of the word "duty" as used in 14 CFR 121.471(d), and further finds that the word "duty" in 14 CFR 121.-471(d) does not include a crewmember on "back-up reserve" status. If the Federal Aviation Administration believes it is necessary to include "back-up reserve" status within the meaning of the word "duty" as used in 14 CFR 121.-471(d) in order to promote air safety it can do so under its own rulemaking powers by rewriting the regulation so as to make such meaning clear.

The Court accordingly overrules plaintiff's motion for summary judgment and sustains the defendant's motion for summary judgment.